IN RE INTEREST OF J.G., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLANT, V. J.G., APPELLEE.

437 N.W.2d 153

Filed March 17, 1989.   No. 88-955.

Michael G. Heavican, Lancaster County Attorney, and Alicia B. Henderson for appellant.

Sandra A. DeLair, of DeLair & DeLair Law Offices, for appellee.

WHITE, J.

This is an appeal by the State of Nebraska to one judge of the Nebraska Supreme Court pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1985). The State appeals an order of the separate

juvenile court of Lancaster County suppressing a statement made by J.G., a 14-year-old minor, and the seizure of a BB gun by the Lincoln Police Department.

On September 13, 1988, Officer Thomas Addeson of the Lincoln Police Department went to the residence of Dorothy White, J.G.'s legal guardian, to arrest J.G. for attempted sexual assault and burglary. Officer Addeson told J.G. he was under arrest, and then handed him a *Miranda* warning and waiver form. J.G. was instructed by Officer Addeson to read each question, answer as he saw fit, and sign his name on the bottom when he was finished. The last question on the form said, "Do you willingly waive and do without the services of an attorney at this time?" J.G. answered "yes" to each question on the form, including the last one, and handed it back to the officer.

According to Officer Addeson, after examining the form and seeing that J.G. had "waive[d] his rights," he asked a question or made a statement concerning the whereabouts of a BB gun taken from the victim's house. In response, J.G. said that he had the gun but that another person had the victim's boots. Officer Addeson then handed the *Miranda* warning and waiver form to White, who crossed out J.G.'s affirmative response to the last question and wrote in "no." She also verbally stated that she wanted an attorney for J.G.

In contrast, White's testimony indicates that after J.G. filled out the form, Officer Addeson then handed it to her. She filled out the form, crossed out J.G.'s response to the last question, and wrote in "no." White told the officer, "We're changing this last one because we are going to have to have an attorney." By White's account, it was after she had requested an attorney that Officer Addeson asked about the BB gun, to which question J.G. stated he had the gun.

J.G. testified that Officer Addeson questioned him about the BB gun during the time White was filling out the *Miranda* warning and waiver form.

The record also shows that Officer Addeson had J.G. retrieve the gun and give it to him after White had filled out the form and requested an attorney.

J.G.'s attorney moved to suppress the statement and the seizure of the BB gun on the grounds that the statement was

obtained after J.G. had requested an attorney, and therefore illegally obtained, and that the seizure of the BB gun was the fruit of the illegal interrogation. The court suppressed the statement and the seizure of the gun, finding that

[J.G.] and his legal guardian, Ms. Dorothy White, had a right to request legal counsel and *legal counsel was requested*. Once legal counsel was requested, all further interrogation or the direction to adduce alleged evidence was improper. The motion to suppress any alleged evidence on any statement made by [J.G.] in regard to [the victim's] BB gun and the direction to retrieve a BB gun should be suppressed.

IT IS THEREFORE . . . ORDERED . . . that any statement made by [J.G.] *after his legal guardian, Ms. Dorothy White, requested legal counsel* for [J.G.] and any seizure of property after said request for legal counsel, are suppressed.

(Emphasis supplied.)

It is apparent from the court's order that the judge, as a matter of law, believed that White, as J.G.'s legal guardian, had the authority to assert J.G.'s right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous. [Citations omitted.] In determining whether a trial court's findings are clearly erroneous, this court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding such motion to suppress.

*State v. Price*, 229 Neb. 448, 450, 427 N.W.2d 81, 83 (1988). However, the posture of this case requires a review of the district court's application of law, not fact. "[R]egardless of the differing standards of review accorded factual questions, this court has an obligation to reach an independent conclusion on a question of law." *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 466, 428 N.W.2d 141, 150 (1988).

An examination of J.G.'s motion to suppress reveals that

suppression of his statement and the BB gun was requested on the grounds that these items were obtained or seized after J.G. allegedly asserted his right to counsel. The issue of whether J.G., under the totality of the circumstances, knowingly, intelligently, and voluntarily waived his right to counsel prior to making the statement was never raised, nor was the issue of whether J.G. made the statement knowingly, intelligently, and voluntarily under the totality of the circumstances. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). The only issue the separate juvenile court addressed was whether J.G. was questioned, in violation of *Miranda v. Arizona, supra*, after his legal guardian allegedly invoked his right to counsel. Therefore, review of this matter will be limited to that issue alone.

Generally, cases in this jurisdiction involving the admissibility of a minor's statement have centered on the issue of whether, under the totality of the circumstances, the statement was knowingly, intelligently, and voluntarily made. See, *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979); *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986); *State v. McDonald*, 195 Neb. 625, 240 N.W.2d 8 (1976); *State v. Lytle*, 194 Neb. 353, 231 N.W.2d 681 (1975); *State v. Russell*, 194 Neb. 64, 230 N.W.2d 196 (1975). There are no cases in Nebraska which directly hold that the legal guardian or parent of a minor can assert the *Miranda* rights on behalf of that minor, or even that a legal guardian or parent has to be present at the time the minor gives a statement to the police. Nebraska case law is in conformity with the current position of the U.S. Supreme Court on these issues. See, e.g., *Gallegos v. Colorado*, 370 U.S. 49, 82 S. Ct. 1209, 8 L. Ed. 2d 325 (1962); *Little v. Arkansas*, 435 U.S. 957, 98 S. Ct. 1590, 55 L. Ed. 2d 809 (1978) (Marshall, J., dissenting).

However, Nebraska does not entirely ignore the impact a legal guardian or parent can have on a minor who is asked to respond to police questions where *Miranda* would be applicable. For example, in *State v. Stewart, supra*, one of the grounds on which the minor contended that his confession was inadmissible was that it was obtained without first notifying his

parents. That court, citing *State v. McDonald, supra, State v. Lytle, supra,* and *State v. Russell, supra,* for the proposition that there is no requirement in Nebraska that the juvenile's parents be notified prior to taking a statement, held that the role of the parents is a factor to be measured in determining if the confession was knowingly, intelligently, and voluntarily made under the "totality of the circumstances." Clearly, then, this jurisdiction holds that the absence of a parent will not make a juvenile's statement involuntary per se, but it is a factor to be considered in the totality of the circumstances.

Furthermore, the Nebraska Supreme Court has, in other contexts, recognized that rights guaranteed by the U.S. Constitution are personal. For example, the court has held that the constitutional right to be free from unreasonable searches and seizures is personal, and therefore can only be asserted by the person aggrieved by the unreasonable search and seizure. *State v. Searles,* 214 Neb. 849, 336 N.W.2d 571 (1983), *cert. denied* 466 U.S. 906, 104 S. Ct. 1684, 80 L. Ed. 2d 158 (1984). By analogy, it logically follows that a person's right against compulsory self-incrimination, which is protected by the *Miranda* rules, see *Michigan v. Tucker,* 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974), is personal and can only be asserted or waived by the person whose right against self-incrimination is affected. Therefore, since the right against self-incrimination is personal, the right to invoke the protections of *Miranda* must also be personal.

Hence, in the case at bar, White did not have carte blanche to invoke a *Miranda* right to counsel on behalf of J.G., especially since the facts indicate that J.G. initially waived that right. This holding is not to be interpreted as making all actions of a parent or legal guardian who attempts to assert *Miranda* rights on behalf of his or her minor children irrelevant. Rather, these actions are the proper subject of review when the motion to suppress challenges whether the waiver of *Miranda* rights was knowingly, intelligently, and voluntarily made under the totality of the circumstances or whether the statement was made knowingly, intelligently, and voluntarily under the totality of the circumstances, and had J.G. brought the motion to suppress on other grounds, the result might have been different.

The court erred in holding that White had the authority to assert J.G.'s right to counsel on his behalf. Since J.G. chose to waive his *Miranda* rights and did not reassert those rights prior to the making of the statement at issue or the seizure of the BB gun, those items were improperly suppressed. Accordingly, the judgment of the separate juvenile court is reversed.

REVERSED.