**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Henry FUTCH and Jack Roger Fowler, Defendants-Appellants.**

No. 79–2723.

United States Court of Appeals, Fifth Circuit. Unit B

Feb. 19, 1981.

Clyde M. Taylor, Tallahassee, Fla., for Futch.

Alvin E. Entin, Ronald A. Dion, North Miami Beach, Fla., for Fowler.

William T. Moore, U. S. Atty., Augusta, Ga., Melissa S. Mundell, David Roberson, William H. McAbee II, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

This is an appeal from an order of the United States District Court for the South-

* District Judge of the Northern District of Alabama, sitting by designation.

ern District of Georgia denying the appellants' motion to dismiss the indictment against them on the ground of double jeopardy. The question raised by the parties on this appeal is whether the district court was correct in its disposition of that motion. Our review of the record in this case persuades us that the decision below should be affirmed.

On June 29, 1979, the appellants were indicted along with nine others on charges of conspiracy to possess and possession with intent to distribute some 40,559 pounds of marijuana.[1] The conspiracy was alleged to have continued from October 1978 through a portion of May 1979, and to have taken place in Chatham County, Georgia, and elsewhere.

On July 6, 1979, prior to trial, the appellants moved to dismiss the indictment on the ground that it placed them a second time in jeopardy for a single offense, and thus violated the prohibition of the fifth amendment to the Constitution of the United States. The former jeopardy alleged by the appellants stemmed from their indictment on December 5, 1978, on charges of conspiracy to possess and possession with intent to distribute some 40,329 pounds of marijuana.[2] This conspiracy was alleged to have continued from around November 23, 1978, to approximately November 25, 1978, and to have taken place in Liberty County, Georgia, and elsewhere. These charges were dismissed as to Fowler on January 30, 1979. Futch went on to trial and was acquitted on February 3, 1979. The other eight coindictees were ultimately tried and the convictions which resulted were upheld by this court. *United States v. Edmonds*, 611 F.2d 1386 (5th Cir. 1980); *United States v. Posey*, 611 F.2d 1389 (5th Cir. 1980).

In the instant case, a pretrial hearing on the appellants' motion to dismiss was held on July 9, 1979. Following the procedures outlined by this court in *United States v. Stricklin*, 591 F.2d 1112 (5th Cir.), *cert. denied*, 444 U.S. 963, 106 S.Ct. 449, 62 L.Ed.2d 375 (1979), the district court determined that the appellants had tendered a prima facie nonfrivolous double jeopardy claim and thereby had shifted to the government the burden of proving by a preponderance of the evidence that the conspiracy counts of the two indictments in fact charged separate offenses. *Id., United States v. Inmon*, 568 F.2d 326 (3rd Cir. 1977), later appealed, 594 F.2d 352 (3rd Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79, (1979). The government presented evidence on the issue of whether the two indictments charged separate offenses[3] and the district court determined that in so doing the government had met its burden of proof. The district court entered its order denying the appellants' motion on July 10, 1979, and the appellants brought this appeal.[4]

The appellants contend that the district court erred in finding that the government proved by a preponderance of

---

1. An earlier indictment returned on May 17, 1979, was superseded by this indictment.
   Indicted along with appellants Futch and Fowler were nine coconspirators:
   Antonio E. Bascaro
   Jake H. Davis, Jr.
   John Doe a/k/a William A. Jenkins
   Michael Ray Johnson
   Kenneth Bryan Jones
   Honorio Montanez
   Lloyd D. Murray
   Manuel Enrique Puig-Arrango
   Barry Gene Spence

2. The December indictment named eight coconspirators in addition to Futch and Fowler:
   Michael J. Birmingham
   James Allen Posey a/k/a James D. Johnstone
   Joseph G. Questionati
   John Wayne Edmonds
   Charley M. Jones
   Perry D. Allison
   Garell M. Ingram
   Thomas E. Carlton

3. The record of the pretrial hearing of July 9, 1978, includes testimony directed toward the resolution of other pretrial motions, as well as the one at issue here.

4. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), held that a denial of a motion to dismiss an indictment on double jeopardy grounds results in an appealable final order. When appellants appealed in this case they were severed from the trial and trial proceeded with the codefendants.

the evidence that the two indictments referred to two separate conspiracies.[5] We disagree.

We first note that our review of the record convinces us that appellant Fowler has no double jeopardy claim. In a case which is tried by a jury, jeopardy attaches when the jury is impanelled and sworn. *United States v. Garcia*, 589 F.2d 249, 251 (5th Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *United States v. Stricklin*, 591 F.2d at 1120. The record reveals that the charges against Fowler in the December indictment were dismissed on January 30, 1979. However, the jury in that trial was not sworn until January 31, 1979.[6] No jeopardy had attached in Fowler's case; therefore, trial on the June indictment would not have subjected him to double jeopardy. Since Futch went on to trial on the charges in the December indictment, his double jeopardy claim must be addressed.

To support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. *United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1978). The question that is central to double jeopardy claims arising in the context of a narcotics conspiracy is "whether the particular transactions alleged in the indictment were within a larger unified conspiracy." *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978). The usual tests for determining the existence of a unified conspiracy are whether: the participants shared a continuing, common goal of importing marijuana for profit; the operations of the conspiracy

followed an unbroken and repetitive pattern; and the cast of coconspirators remained the same. *United States v. Stricklin*, 591 F.2d at 1122; *United States v. Ruigomez*, 576 F.2d at 1151. This circuit has indicated the factors to be considered by the court in concluding that events charged in two indictments were part of a single agreement:

(1) time, (2) persons acting as coconspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*United States v. Stricklin*, 591 F.2d at 1122; *United States v. Marable*, 578 F.2d at 154.

In *Stricklin* this court set forth procedural standards to be applied in resolving a defendant's double jeopardy claim. A defendant urging former jeopardy must present evidence in a pretrial hearing which establishes a prima facie nonfrivolous double jeopardy claim in light of the above factors. If the defendant establishes such a prima facie claim the burden shifts to the government to prove by a preponderance of the evidence that the indictments involved in fact charge separate offenses. *United States v. Stricklin*, 591 F.2d at 1118.

In the present case the district court found that the defendants did make a nonfrivolous claim. Supporting that claim were: the two indictments charged the same offense, conspiracy to possess; the

5. We note that appellants also complain that the district court's denial of their motion for a bill of particulars hampered the presentation of their double jeopardy claim. We find this contention to be without merit. The government is not required to allege or prove overt acts as an element of the crime charged in this indictment. 21 U.S.C. § 846; *United States v. Rodriquez*, 612 F.2d 906, 919, n. 37 (5th Cir.), *cert. granted sub. nom., Albernaz v. United States*, —— U.S. ——, 101 S.Ct. 69, 66 L.Ed.2d 20 (1980). The power to grant or deny a motion requesting a bill of particulars is discretionary with the district court. *United States v. Har-*

bin, 601 F.2d 773, 778 (5th Cir.), *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979), and the district court's denial of such motion can be overturned on appeal only on a showing of abuse of discretion or a showing that the movant was actually surprised, and thereby prejudiced, by the denial. There has been no such showing here.

6. The district court stated in its order concluding there were two separate criminal agreements that charges against Fowler were dismissed after a jury had been sworn. The record shows that this was erroneous.

geographic areas involved in the two indictments were somewhat proximate; the times set forth in the two indictments were overlapping; the two defendants were charged in both indictments and Spence, who was charged in the June indictment, was alleged to have been involved in the conspiracy charged by the December indictment. The district court found, however, that the government met its burden of proving by a preponderance of the evidence that the conspiracy charged in the December indictment and the conspiracy charged in the June indictment are two separate agreements.

█ The appellants argue that the district court erred in determining that the government met its burden of proving by a preponderance of the evidence that the indictments in fact charged separate conspiracies. We disagree.

In considering the merits of this appeal, we focus upon the elements examined by the district court.

### (1) Time

The government's single witness at the pretrial hearing testified that the time period covered by the conspiracy charged in the December indictment (November 23, 1978 through November 25, 1978) was wholly contained within the time period covered by the conspiracy charged in the June indictment (October 1978 through a portion of May 1979). The trial resulting from the December indictment had been completed with Fowler dismissed and Futch acquitted before the events precipitating the June indictment occurred.

### (2) Persons Acting As Coconspirators

Of the twenty-one persons named in the two indictments, only two, Futch and Fowler, were common to both indictments. A third, Barry Spence, was named in the June indictment and his name was also mentioned prominently as a coconspirator in the trial resulting from the November indictment. Thus, there were eight other people named in the December conspiracy and eight other people in the May conspiracy, none of whom were named in both. The casts of characters in the two operations were predominately different.

### (3) Statutory Offenses

The offenses charged in both indictments are the same.

### (4) Overt Acts or Other Description of the Offense Charged

The December indictment charged that ten-wheel trucks were used to pick up the load of marijuana from a shrimpboat at a private dock in a secluded area. The June indictment did not charge overt acts, however, the testimony at the pretrial hearing reveals that the indictment dealt with a discrete import and off-load operation in which ten-wheelers were at a dock in a residential area to pick up marijuana from a shrimpboat. We note that many agreements to import and off-load marijuana in this country utilize such shrimpboats and trucks to carry out the plan so that it is not unusual for two separate conspiracies to employ this common means of implementation.

### (5) Geography

The testimony shows that both conspiracies occurred in the Southern District of Georgia. However, the November off-load operation took place in Liberty County and the March off-load operation took place in Chatham County. Liberty and Chatham are separate noncontiguous counties along the Georgia coast. There are six counties along the Georgia coast. Conspiracies which accomplish their goals by importing marijuana on shrimpboats necessarily would off-load in some coastal county. It is not uncommon for these off-load operations to occur along a southern coast. Each indictment in this case names a different county as the place where the conspiracy charged occurred making the operations dissimilar and lending credence to the conclusion that the conspiracies were separate.

(6) Other Relevant Factors

(a) The amounts of marijuana seized in both operations were over 40,000 pounds. There were 40,329 pounds seized in November and 40,559 pounds seized in March. The similarity in weight should not force the conclusion that the two operations were part of a larger conspiracy since any other operation which utilized a shrimpboat to transport bales of marijuana would just as likely involve a similar amount. The similar amounts reflect the capacity of a shrimpboat.

(b) The government witness testified that the investigating officers had received no information concerning the November conspiracy, despite the fact that they were in constant contact with a cooperating individual who was a member of the March conspiracy. On that basis the government witness expressed the opinion that the two transactions were separate.

Applying the foregoing factors convinces us that the district court's decision was not in error. The dissimilarity of persons, places and modes of operation does not show an unbroken or repetitive pattern. *Stricklin*, 591 F.2d at 1122. Most of the seeming similarities represent those factors which would be common to separate conspiracies carried out in a similar manner.

Having held that Fowler has no double jeopardy claim and that Futch's motion to dismiss based on his double jeopardy claim was correctly denied by the district court, we affirm the order of the district court.

AFFIRMED.