UNITED STATES of America,
Plaintiff-Appellee,

v.

James Malcolm HENRY,
Defendant-Appellant.

No. 80–7619.

United States Court of Appeals,
Fifth Circuit *.
Unit B

Nov. 13, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Paul L. Hanes, Hanes & Young, Atlanta, Ga. (Court-appointed), for defendant-appellant.

William S. Sutton, Charles S. Saphos, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant James Malcolm Henry appeals from a district court order denying his motion to dismiss his criminal prosecution for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Appellant contends that the current prosecution violates the double jeopardy clause of the fifth amendment. The district court rejected this claim. We affirm.

I. Background

On May 1, 1979, a federal grand jury in the Northern District of Georgia returned two indictments against appellant Henry. Each indictment alleged a conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The first indictment, (the *Perry* indictment) named Henry together with James Edward Brown, Omar Ell, and Quentin Morgan Perry in a conspiracy to acquire quantities of cocaine for distribution in the eastern United States. This indictment was superseded on August 7, 1979,[1] by an indictment on the same charge adding two "John Doe" defendants and further overt acts. The overt acts alleged occurred between December, 1977 and May, 1979,[2] and comprised: (1) a meeting in Detroit during December, 1977, among Perry, Brown, and Henry; (2) a meeting in Detroit on December 15, 1977, among Henry, Ell, and Officer Sylvester Chapman of the Detroit Police Department concerning the delivery of cocaine; (3) the delivery of cocaine in Atlanta during January, 1978, by Henry and Ell to Perry; (4) a meeting in Tampa, Florida, in May, 1978, among Henry, Ell, John Doe a/k/a Dicky and a "Mr. Bishop"; (5) the delivery of cocaine in Atlanta during January, 1978, by Henry to a representative of Perry, John Doe a/k/a Chuck, and Brown; (6) a trip to Fort Lauderdale, Florida, during March, 1978, by Ell, Perry, and Brown for the purpose of acquiring cocaine; (7) and (9) the delivery of cocaine by Brown to Officer Chapman on August 2 and 9, 1978, in Detroit; (8) a meeting among Ell and undercover officers in Atlanta on August 3, 1978, to discuss the delivery of cocaine; (10) a meeting between Ell and undercover agent Gregory Demmink of the Drug Enforcement Administration (DEA) on December 8, 1978, in Atlanta to discuss the future delivery of cocaine; and (11) the possession of quantities of cocaine by Brown in Marietta, Georgia, in April and May, 1979.

---

1. Omar Ell pleaded guilty to the original indictment and testified before the grand jury. He was named an unindicted co-conspirator in the second indictment.

2. The second *Perry* indictment had incorrectly listed the date as May, 1978. A third indictment, substantively identical to the second, corrected this typographical error.

The second indictment, (the *Nicoll* indictment) named Henry, Jim Nicoll and Kathy Seeka in a conspiracy to acquire cocaine for distribution throughout the United States. Five overt acts occurring between August 9, 1978, and November 30, 1978, were alleged: (1) a meeting between Henry and Special Agent Tyrone Yarn of the DEA on August 9, 1978, in Atlanta to discuss the acquisition of cocaine from Yarn; (2) an attempt by Henry on August 9, 1978, to call Jim Nicoll in Dallas, Texas, to arrange a meeting between Nicoll and Yarn; (3) a telephone conversation on September 8, 1978, between Nicoll in Dallas and DEA agent Melvin Smith in Atlanta to discuss the purchase of cocaine; (4) a telephone conversation between Nicoll and Smith discussing the acquisition of cocaine for Nicoll's customers in Denver, Colorado; and (5) a meeting on November 30, 1978, in Dallas among Nicoll, Kathy Seeka, Smith and DEA agent Gloria Woods to discuss the delivery of cocaine for a Dallas customer.

■ On October 23, 1979, Henry was tried and acquitted on the *Perry* charges. He then filed a motion to dismiss the *Nicoll* prosecution, alleging that the *Perry* acquittal barred, by reason of double jeopardy, trial on the *Nicoll* charges. At a hearing on the double jeopardy claim, the parties stipulated to the evidentiary record for the motion. This record included the *Perry* and *Nicoll* indictments, the transcript of appellant's Perry trial, transcripts of telephone calls recorded by the DEA in relation to the *Perry* and *Nicoll* indictments, records of telephone calls between Omar Ell and Jim Nicoll, and business records showing dealings between Ell and Nicoll. After reviewing these materials, the trial court denied Henry's motion to dismiss and he appealed.[3]

## II. Double Jeopardy

■ To succeed on a claim of double jeopardy, a defendant must show that in law and fact the two offenses charged are in reality the same. *United States v. Futch*, 637 F.2d 386, 389 (5th Cir. 1981);

*United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1978). The central question underlying double jeopardy claims in the context of a narcotics conspiracy is "whether the particular transactions alleged in the indictments were within a larger, unified conspiracy." *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978). *See Futch, supra* at 389; *United States v. Stricklin*, 591 F.2d 1112, 1122 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979); *Marable, supra* at 153. More specifically, the evidence must show that the participants shared a continuing, common illegal goal and that the operations of the conspiracy followed an unbroken, repetitive pattern. *Futch, supra*, at 389; *Stricklin, supra* at 1122; *Ruigomez, supra*, at 1151.

■ Several recent cases have delineated the factors a court must consider to decide whether only one conspiracy existed: (1) time, (2) persons acting as coconspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*Futch, supra*, at 389; *Stricklin, supra*, at 1122; *Marable, supra*, at 154. Appellant asserts that because the time period of the two conspiracies overlapped, acts to further each conspiracy occurred in Atlanta, and the statutory offenses charged were the same, only one conspiracy existed. Appellant, moreover, asserts that evidence indicating Jim Nicoll was acquainted with Omar Ell (a *Perry* defendant) supports the single conspiracy theory.

We disagree. Although the time periods did overlap and both conspiracies were for the distribution of cocaine in violation of 21 U.S.C. § 846, other evidence weighs heavily in favor of finding separate conspiracies.

---

**3.** *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), held that a denial of a motion to dismiss on grounds of double jeopardy is an appealable final order.

See *Futch, supra*, at 390–91.[4] Geographically, the *Perry* conspiracy was centered in Detroit with some overt acts in Atlanta and Tampa; the *Nicoll* conspiracy, in contrast, involved acts in Dallas and Atlanta. The evidence indicates only one person was common to both conspiracies, appellant Henry. The bare fact that Nicoll, Henry, and Ell were business acquaintances does not implicate them in one ongoing conspiracy to broker drugs. As this court repeatedly has noted, mere association with someone involved in a criminal enterprise is insufficient to prove participation in a conspiracy. *United States v. Horton*, 646 F.2d 181, 185 (5th Cir. 1981); *United States v. Fitzharris*, 633 F.2d 416, 423 (5th Cir. 1980). The evidence failed to show that Ell and Nicoll ever discussed cocaine dealings during the period alleged; nor did the evidence show any cooperation between the *Perry* and *Nicoll* drug groups. Even the police officials involved in exposing the two conspiracies differed. In short, we find no evidence that the *Perry* and *Nicoll* groups were part of a single ongoing cocaine distribution conspiracy. Cf. *Ruigomez, supra*, at 1151.

### III. Collateral Estoppel

Appellant also submits that the *Perry* acquittal collaterally estops the government from raising the "same" issues of conspiracy in the *Nicoll* prosecution. We reject this contention.

The leading case on the applicability of collateral estoppel to criminal prosecutions is *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). There the Supreme Court, holding that collateral estoppel is a protection embodied in the fifth amendment guarantee against double jeopardy, explained the doctrine to mean that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. This circuit has interpreted *Ashe* to require a twofold inquiry for analyzing collateral estoppel claims: the court first must determine what facts were necessarily decided in the first lawsuit, and second, whether the prosecution in a second trial has attempted to relitigate these facts. *United States v. Griggs*, 651 F.2d 396, 398 (5th Cir. 1981); *United States v. Mock*, 604 F.2d 341, 343 (5th Cir. 1979). When dealing with an acquittal by general verdict, "this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter . . . ." *Ashe, supra*, 397 U.S. at 444, 90 S.Ct. at 1194.

Our review of the record indicates that the doctrine of collateral estoppel is not applicable in this case. The fact that Henry was acquitted of conspiracy with the *Perry* group does not foreclose a second jury from finding Henry conspired with the wholly separate *Nicoll* group. The only reference to the *Nicoll* conspiracy at the *Perry* trial was in the prosecution's rebuttal case. After Henry had testified that he had never been involved in any narcotics transactions, DEA agent Tyrone Yarn testified as to Henry's *Nicoll* involvement to impeach Henry's disclaimer.[5] The jury, however, did not necessarily have to decide Henry was innocent of the *Nicoll* charges to acquit on the *Perry* charges. When a fact was not necessarily determined in a former trial,

---

4. In *Futch* we faced a situation involving two conspiracies to distribute marijuana which overlapped in time and geographic area, and had similar operations. We held, nevertheless, that the conspiracies charged were separate; we noted it would not be unusual for separate conspiracies to offload marijuana in coastal Georgia to have similarities, such as the use of shrimp boats. Because the "cast of characters" was substantially different, we concluded the conspiracies charged were not part of one overall conspiracy. As in *Futch*, here we discount the similarity of the charges and the fact that overt acts in both conspiracies occurred in Atlanta. Any drug conspiracy would come within the purview of 21 U.S.C. § 846; thus the similarity in charges is hardly surprising. Given the size and centrality of Atlanta as a transportation hub, moreover, many drug conspiracies involve overt acts in Atlanta.

5. The trial court instructed the jury in connection with Yarn's testimony that Henry was not on trial for any alleged misconduct other than that specifically charged in the *Perry* indictment.

collateral estoppel does not bar subsequent relitigation of that fact. *United States v. Ballard,* 586 F.2d 1060, 1064 (5th Cir. 1978); *United States v. Gonzales,* 548 F.2d 1185, 1191 (5th Cir. 1977). Accordingly, we hold that collateral estoppel does not bar the *Nicoll* prosecution.

AFFIRMED.[6]

---

6. Prior to oral argument, the government moved to supplement the record with confidential material relating to the *Perry* and *Nicoll* indictments; this material was reviewed by the trial court *in camera* prior to ruling on appellant's motion to dismiss. Because we have decided this case in favor of the government on the basis of the record before us, the motion to supplement is DENIED.

